## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Sterling Zeier,
Pamela Zeier
Legacy 1, LLC a Colorado limited liability company,

      Plaintiff(s),

v.

G.F. Investment Services, LLC a Florida limited liability company,
Global Wealth Management Investment Advisory, Inc. a Florida corporation,
Andrew G. Costa an individual,
Andrew M. Costa an individual,

      Defendant(s).

---

## COMPLAINT

---

Plaintiffs Sterling Zeier, Pamela Zeier and Legacy 1, LLC (hereinafter referred to mostly as "Plaintiffs"), by their attorneys and for their Complaint against Defendants Andrew M. Costa, Andrew G. Costa, G.F. Investment Services, LLC a Florida limited liability company, Global Wealth Management Investment Advisory, Inc. (referred to mostly hereafter as "Defendants") allege as follows:

## I.  SUMMARY

1.     Plaintiffs are victims of the Woodbridge ponzi scheme which is the subject of an SEC enforcement action styled *Securities and Exchange Commission v. Robert H. Shapiro et al*., U.S. District Court Southern District of Florida, Case No. 17-24624 ("SEC Action").

2.     The SEC Action which was filed December 20, 2017 alleges *inter alia* that Robert H. Shapiro ("Shapiro"), Woodbridge Group of Companies, LLC and its affiliates (hereinafter referred to mostly as "Woodbridge"), committed numerous violations of the federal securities laws. The SEC's Complaint seeks to permanently enjoin the SEC Action defendants from further securities law violations and the appointment of a receiver with respect to Woodbridge and other Shapiro-related entities.   Upon information and belief, the SEC does not seek restitution for the investors who have lost, or who face a substantial risk of losing, their investment.

3.     Defendants, who are not named Defendants in the SEC Action, solicited and sold Plaintiffs $696,000 worth of unregistered securities issued by affiliates of Woodbridge and which came in the form of promissory notes and private placement offerings comprised of loans made to third-party borrowers.

4.     The burden of proof in establishing the existence of an exemption from registration under state and federal securities laws is upon the person claiming the exemption.

5.     As is more fully outlined below, Defendants engaged in the solicitation and sale of unregistered securities and otherwise engaged in transactions, acts or courses of business that constitute violations of both federal and state securities laws including without limitation violations of the registration provisions of Sections 5(a) and (c) of the Federal Securities Act as well as violations of the Florida Securities Act and common law.

## II.      JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as the action arises under the laws of the United States.   Jurisdiction is likewise proper in this Court pursuant to 28 U.S.C. §1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7.   Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because many of the acts, practices, transactions and courses of business occurred within the District.   Venue is likewise proper pursuant to 15 U.S.C. §78aa(a) because Defendants transact business in the District.

### III.   PARTIES

8.     Defendant Andrew M. Costa ("Costa") is a resident of Palm Beach County, Florida.

9.     Defendant Andrew G. Costa ("Costa Sr.") is upon information and belief a resident of Palm Beach County, Florida and the father of Costa.

10.     Defendant G.F. Investment Services, LLC ("GFIS") is a Florida limited liability company with a main office located at 501 North Cattlemen Road, Suite 106, Sarasota, FL  34232.   According to FINRA Broker Check records, GFIS has been approved to sell securities in Colorado effective March 11, 2005.

11.     Defendant Global Wealth Management Investment Advisory, Inc. ("GWMIA") is a Florida corporation and SEC registered investment advisor. GWMIA's primary office is located at 2810 East Oakland Park Blvd., Suite 101, Fort Lauderdale, FL  33306.

12.      Plaintiff Sterling Zeier (age 64) is a resident of Jefferson County, Colorado and is married to Plaintiff Pamela Zeier.

13.     Plaintiff Pamela Zeier (age 62) is a resident of Jefferson County, Colorado and is married to Plaintiff Sterling Zeier.

14.     Plaintiff Legacy 1, LLC is a Colorado limited liability company which maintains its principal office street address at 27090 Highway 72, Golden, Colorado

80401.    Plaintiffs Pamela Zeier and Sterling Zeier are both members of Legacy 1, LLC.

## IV.    FACTUAL BACKGROUND

### A.    The Woodbridge Ponzi Scheme

15.    Woodbridge raised more than $1.22 billion from over 8,400 investors nationwide including many from the state of Colorado.

16.    Beginning in July 2012 through at least December 4, 2017, Shapiro orchestrated a Ponzi scheme using Woodbridge entities. Woodbridge was the principal operating company of Shapiro's businesses and employed approximately 140 people in offices in six states. Shapiro was the sole owner and maintained exclusive operational control over Woodbridge and each of its entities.

17.    Woodbridge sold investors two primary types of investments. The first was a twelve-to-eighteen-month term promissory note marketed as paying a 5%-8% annual return on a monthly basis known as First Position Commercial Mortgages. The second was seven different private placement fund offerings with five-year terms, marketed as paying a 6%-10% annual return on a monthly basis and, at the end of five years, a 2% accrued dividend and share of the profits.

18.    Neither of these two types of investments (collectively referred to hereafter mostly as, "Woodbridge securities") were ever registered with the SEC or another government agency.

19.     The purported revenue source enabling Woodbridge to pay returns to investors was the interest a Woodbridge affiliate would be receiving on loans to third-party owners of commercial real estate. Woodbridge represented to investors that its affiliate would pool money from many investors and lend it to a third-party borrower for a short term, and for only about two- thirds of the value of the real estate securing the transaction, thereby ensuring that the "properties that secure the mortgages are worth considerably more than the loans themselves at closing."

20.     Woodbridge and its sales agents like Defendants, told investors that these third-party borrowers were paying the company 11- 15% annual interest for "hard money," short-term financing. As an additional source of revenue, Woodbridge told investors that it would purchase properties to develop and sell for a profit.

21.     In reality, Woodbridge's business model was a sham - the vast majority of the purported third-party borrowers were hundreds of Shapiro-owned and controlled LLCs, which had no source of income, no bank accounts, and never made any loan payments to Woodbridge, all facts Woodbridge and Shapiro concealed from investors. Rather, Shapiro and Woodbridge continued the ruse for the past several years by supporting their business operations nearly entirely by raising and using new investor funds, in classic Ponzi scheme fashion.

22.     The Woodbridge scheme ultimately unraveled on or about December 21, 2017 when the Securities and Exchange Commission announced charges and an asset freeze against a group of unregistered funds and their owner who allegedly bilked thousands of retail investors, many of them seniors, in a $1.2 billion Ponzi scheme.   See, www.investor.gov/additional-resources/news-alerts/press-releases/sec-charges-operators-12-billion-ponzi-scheme.

**B.     Defendants Solicit and Sell Plaintiffs Woodbridge Securities**

23.     Plaintiffs first contact with Defendants occurred in January of 2016 when they listened to a radio talk show sponsored by Costa Global Wealth Management.

24.     Said radio show touted among other things Costa's investment management services as well as the viability of investing in real estate first position commercial mortgages including upon information and belief securities issued by Woodbridge.

25.     Time, use and content of the above radio show was also upon information and belief done with the authorization and consent of GFIS and GWMIA.

26.     Shortly after listening to same, Plaintiffs decided that they would personally visit the offices of Global Wealth which happened to also be near the condominium Plaintiffs were renting in Ft. Lauderdale, Florida.

27.     Plaintiffs at that time were looking for advice on how best to invest their personal and retirement savings and which included substantial proceeds Plaintiffs had received from the sale of a family ranch.

28.     On or about January 6, 2016, Plaintiffs visited the offices of Global Wealth Management where they personally met Costa Sr.

29.     At the time of the January 6, 2016 meeting, Plaintiffs were presented with the business card listed below:



30.      The business card referenced above which Costa Sr. presented to Plaintiffs states and represents: "Securities offered through GF Investment Services, LLC Member FINRA/SIPC."

31.      At all times relevant hereto, Costa and Costa Sr. held themselves out as agents of GFIS and GWMIA and Plaintiffs believed both to be actively involved in the investment recommendations and sales made to Plaintiffs.

32.      At all times relevant hereto, GFIS and GWMIA consented, approved and otherwise allowed Costa and Costa Sr. to hold themselves out as agents of GFIS and GWMIA.

33.      At all times relevant hereto, GFIS and GWMIA cloaked Costa and Costa Sr. with actual, implied and/or apparent authority to act on their behalf.

34.      At all times relevant hereto, Costa and Costa Sr. were acting within the course and scope of their employment.

35.      At all times relevant hereto, Plaintiffs reasonably believed that Costa and Costa Sr. were working together as authorized agents of GFIS and GWMIA.

36.      At all times relevant hereto, Costa knew that Costa Sr. was soliciting, recommending and selling Woodbridge securities to investors and that he was further doing such while holding himself out and otherwise acting as an agent on behalf of GFIS and GWMIA.

37.     Costa in fact is an officer, director and/or control person of GWMIA and was affiliated as a securities broker with GFIS from February 2010 to August 2017.

38.     During a one on one meeting which took place between Plaintiffs and Costa Sr. in approximately January 2016, Costa Sr. recommended that Plaintiffs purchase Woodbridge securities and represented in connection with same that:

    a.  Woodbridge was the best investment he had seen for investors;

    b.  Woodbridge offered investors short term, dynamic growth in a secured product;

    c.  Fixed annual yields of five percent (5%);

    d.  Stable monthly income secured by commercial real estate;

    e.  Further security in the form of first position commercial mortgage notes;

    f.  Thirty-five (35) years of unsurpassed experience and reliability in which there had never been a default;

39.     During the course of said meeting, Plaintiffs informed Costa Sr. that they were conservative investors and did not consider themselves experienced in matters of investment.

40.      Plaintiffs further informed and Defendants were otherwise aware that Plaintiff Sterling Zeier was receiving social security disability benefits as a result of severe back problems.

41.      Prior to investing with Defendants, Plaintiffs' investment assets consisted primarily of stocks, bonds, annuities and cash in savings accounts.

42.      Defendants recommended that Plaintiffs finance a portion of their Woodbridge securities purchases by liquidating bond and annuity investments.

43.      Annuity investments contain substantial surrender charges if liquidated.

44.      Defendants represented that any annuity surrender charges Plaintiffs may incur would be more than covered by the income generated by the Woodbridge securities.

45.      In or around September of 2016, Costa Sr. recommended that Plaintiff Pamela Zeier transfer retirement funds held in Ms. Zeier's government Thrift Savings Plan ("TSP") in the amount of approximately $186,500 into an IRA account so that said funds could ultimately be invested into Woodbridge securities.    The funds accumulated in Mrs. Zeier's TSP account were the result of over twenty years of service working as a federal government employee consisting of ten years at the USDA Farm Services Bureau and ten years as an airport TSA agent.

46.      Costa Sr. assisted Mrs. Zeier in moving her TSP funds into an IRA account at Provident Trust.

47.     In reliance upon Defendants' representations and purported experience and expertise, Plaintiffs all told made the following purchases of Woodbridge securities:

| Purchase Date | Investor | Security | Cost Basis |
|---|---|---|---|
| 1/20/2016 | Legacy 1, LLC | Laurel Way Two (Beverly Hills, CA) | $100,000.00 |
| 1/20/2016 | Legacy 1, LLC | Beverly Estates (Beverly Hills, CA) | $100,000.00 |
| 9/19/2016 | Legacy 1, LLC | Beverly Drive (Beverly Hills, CA) | $160,000.00 |
| 11/8/2016 | Pam Zeier | Woodbridge Mort. Investment Fund 3 (Sherman Oaks, CA) | $50,000.00 |
| 6/21/2017 | Pam Zeier IRA | Woodbridge Mort Investment Fund 4 (Sherman Oaks, CA) | $186,500.00 |
| 6/29/2017 | Sterling Zeier | Woodbridge Mort. Investment Fund 3 (Sherman Oaks, CA) | $100,000.00 |
| | | **Total:** | **$696,500.00** |

48.     Plaintiffs' investments in the above securities are now presumed lost and said losses were caused by Defendants' unlawful conduct as described in this complaint.

**C.      Undisclosed Material Facts**

49.     Defendants failed to disclose material facts relating to both themselves and Woodbridge prior to recommending and selling Plaintiffs the Woodbridge securities.

50.     Defendants failed to disclose that on or about February 21, 2008, Costa Sr. entered into a Letter of Acceptance Waiver and Consent wherein Costa Sr. was barred from associating with any FINRA member in any capacity.   See, Financial Industry Regulatory Authority Letter of Acceptance Waiver and Consent No. 2007011553501, Re: Costa Financial Services, Inc., Respondent - CRD No. 4503 & Andrew G. Costa, Respondent CRD No. 160092 (hereafter the "Costa AWC").

51.     Defendants failed to disclose that Costa was previously affiliated with Costa Financial, Inc. which was expelled from FINRA membership as part of the Costa AWC.

52.     Defendants failed to disclose that on May 4, 2015, Woodbridge entered into a Consent Order with the state of Massachusetts Securities Division relating to their securities sales and admitting *inter alia* that Woodbridge Secure Bridge Loans were not registered as federally-covered securities.   The order further permanently forbids Woodbridge from selling unregistered or non-exempt securities in Massachusetts.   See, *In Re: Woodbridge Mortgage Investment Fund, LLC et al*., Docket E-2015-0039, Commonwealth of Massachusetts Office of the Secretary of the Commonwealth Securities Division (May 4, 2015) (referred to hereafter as "Mass. Order").

53.     Defendants upon information and belief knew and otherwise failed to disclose that Woodbridge was under investigation by the Securities and Exchange

Commission for potential securities violations prior to their solicitation and sale of Woodbridge securities to Plaintiffs.

54.     The existence of the regulatory actions referenced above were material facts which should have been disclosed to investors like Plaintiffs.

55.     Defendants knew about the Costa AWC and Mass Order and deliberately failed to disclose same to Plaintiffs.

56.     Defendants failed to disclose that they did not perform adequate due diligence regarding Woodbridge securities.

57.     Defendants upon information and belief received commissions and/or other financial benefits for selling Woodbridge securities to Plaintiffs.

**D.      Defendants GFIS and GWMIA Participated and Otherwise Allowed Woodbridge Securities To Be Sold To Plaintiffs In Violation Of GFIS And GWMIA's Supervisory and Due Diligence Obligations.**

58.     Defendants GFIS and GWMIA are statutory control people of Costa and Costa Sr. within the meaning of state and federal securities laws.

59.     Defendants GFIS and GWMIA are duty bound to reasonably supervise securities sales activities occurring at their offices including sales of the Woodbridge securities made to Plaintiffs.

60.     Defendants GFIS and GWMIA are duty bound to conduct reasonable due diligence regarding the issuer of any securities they sell to the public which included the Woodbridge securities sold to Plaintiffs.

61.     Defendants GFIS and GWMIA knew and/or should have known that Costa and Costa Sr. sold Woodbridge securities from their offices.

62.     Defendants GFIS and GWMIA knew and/or should have known that Costa Sr. was holding himself out as an agent of GFIS and GWMIA as the case may be and that he was further in connection with same recommending and selling Woodbridge securities to investors including Plaintiffs.

63.     Defendants GFIS and GWMIA expressly and/or impliedly authorized the sale of Woodbridge securities to Plaintiffs.

64.      Defendants GFIS and GWMIA failed to act in good faith in their supervision and control of Costa and Costa Sr. as the case may be and as such directly or indirectly induced the unlawful Woodbridge securities sales made to Plaintiffs.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Sale of Unregistered Securities: Sections 5(a),(c) and 12(a)(1) of the Securities Act
[15 U.S.C. § 77 & 15 U.S.C. § 77l (a)(1)]
(All Defendants)

65.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as though fully set forth herein.

66.     Defendants directly or indirectly by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the

purchase or sale of a security, offered and sold securities or carried or caused such securities to be carried through the mails or in interstate commerce, for the purpose of sale or delivery after sale, when no registration statement had been filed or was in effect as to such securities and thereby causing damages to Plaintiffs.

67.     By virtue of the foregoing, Defendants violated Section 5 of the Securities Act, [15 U.S.C. §77e] and are liable therefore to Plaintiffs for same pursuant to Section 12(a)(1) of the Securities Act [15 USCS § 77l (a)(1)].

## SECOND CLAIM FOR RELIEF
**SECURITIES FRAUD: Sec. 10(b) of the Exchange Act and Rule 10b-5(a) and (c)**
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c)]**
**(All Defendants)**

68.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

69.     Defendants directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made in light of the circumstances under which they were made, not misleading.

70.     By virtue of the foregoing, Defendants directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder and are liable to Plaintiffs for all damages and harm caused by same.

**THIRD CLAIM FOR RELIEF**
**CONTROL PERSON LIABILITY PURSUANT TO SECTION 20(a) OF THE EXCHANGE ACT AND SECTION 15 OF THE SECURITIES ACT [15 U.S.C. §78t & 15 U.S.C. §77o] (Defendants GFIS & GWMIA)**

71.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72.     Defendants GFIS and GWMIA through stock ownership, agency, or otherwise or pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise controlled Defendants Costa and Costa Sr. and who otherwise unlawfully sold Woodbridge securities to Plaintiffs.

73.     By virtue of the foregoing, Defendants GFIS and GWMIA are accordingly jointly and severally liable as control persons for Costa and/or Costa Sr.'s unlawful securities sales pursuant to Section 20(a) of the Exchange Act [15 U.S.C. §78t(a)] and Section 15 of the Securities Act [15 U.S.C. §77o].

**FOURTH CLAIM FOR RELIEF**
**Violations of Florida Securities Act**
**[Fla. Stat. § 517.07, Fla. Stat. §517.301, Fla. Stat. §517.211]**
**(All Defendants)**

74.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

75.     Defendants directly or indirectly by use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of a security, offered and sold securities within the state of Florida or carried or caused such securities to be carried through the mails or in interstate commerce, for the purpose of sale or delivery after sale, when no registration statement had been filed or was in effect as to such securities in violation of Fla. Stat. §517.07.

76.     Defendants also, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Fla. Stat. §517.301.

77.     Defendants Costa and Costa Sr. are subject to the supervision and control of Defendants GFIS and GWMIA and Defendants GFIS and GWMIA

exercised control over Costa and Costa Sr. as the case may be including without limitation control and participation with respect to the solicitation and sale of Woodbridge securities and otherwise with respect to the specific activities upon which Defendants' violations are based.

78.     By virtue of the foregoing, Defendants are accordingly jointly and severally liable to Plaintiffs pursuant to Fla. Stat. §517.211.

## FIFTH CLAIM FOR RELIEF
### Negligence
### (All Defendants)

79.     Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.

80.     Defendants acted and held themselves out as investment advisers to Plaintiffs.

81.     Defendants solicited the trust of Plaintiffs by holding out that Defendants would advise Plaintiffs on the financial management of Plaintiffs' investment portfolio.  These actions created duties on the part of Defendants.

82.     Defendants failed to conduct themselves in accordance with acceptable standards of care in that Defendants among other things recommended Plaintiffs' liquidation of other safer investments such as bonds and annuities in order to

purchase Woodbridge securities and in the process incurring excessive and unnecessary fees and penalties.

83.      The Woodbridge securities were unsuitable and inconsistent with the retirement needs of Plaintiffs.

84.      While suitable investments recorded historic gains during the period in question the investments recommended suffered losses.

85.      The Woodbridge securities sold to Plaintiff are in default.   As a result, Plaintiffs have been and continue to be denied income they need for support.

86.      Defendants' actions all fell below the standards of care for financial professionals.

87.      Plaintiffs have been harmed by Defendants' actions and Plaintiffs are accordingly entitled to recover all damages proximately caused by same.

## SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (All Defendants)

88.      Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.

89.      Defendants had a fiduciary duty to Plaintiffs and had an obligation to act in Plaintiffs' best interests, communicate truthfully when conveying advice, and disclose all material facts and conflicts of interest.

90.     Defendants breached their fiduciary duties to Plaintiffs by *inter alia,* failing to adequately conduct due diligence regarding Woodbridge and to properly understand the Woodbridge securities they recommended and sold to Plaintiffs.

91.     A broad disparity existed in the financial knowledge and sophistication between Plaintiffs and Defendants.

92.     Plaintiffs reasonably relied upon Defendants' purported credentials and expertise regarding matters of investment.   As a result of such, Defendants had actual if not de facto control over Plaintiffs' investment decisions.

93.     Defendants failed to disclose to Plaintiffs material facts and risks associated with an investment in Woodbridge securities including failing to disclose material facts regarding themselves.

94.     Defendants received undisclosed financial remuneration from Woodbridge.   Said financial remuneration was in conflict to the interests of Plaintiffs and further a material fact which Defendants intentionally failed to disclose.

95.     Plaintiffs have been harmed by Defendants' actions and Plaintiffs are accordingly entitled to recover all damages proximately caused by same.

## SEVENTH CLAIM FOR RELIEF
### Negligent Supervision
### (Defendants GFIS and GWMIA)

96.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as though fully set forth herein.

97.     Defendants GFIS and GWMIA had a duty to supervise its representatives.

98.     GFIS and GWMIA had a duty to establish a reasonable compliance system to ensure that those acting on their behalf did so in accordance with acceptable industry standards and otherwise in compliance with GFIS' and GWMIA's fiduciary duties and obligations and otherwise in compliance with state and federal securities laws and regulations.

99.     Defendants GFIS and GWMIA had a duty to monitor all investments and securities sales activity occurring at their offices including the Woodbridge securities recommended and sold to Plaintiffs.

100.     Defendants GFIS and GWMIA failed to exercise reasonable care in the supervision of securities and investment sales activities occurring within their offices thereby causing harm to Plaintiffs and Defendants are accordingly liable to Plaintiffs are all harm proximately caused by same.

## EIGHTH CLAIM FOR RELIEF
### Vicarious Liability
### (Defendants GFIS and GWMIA)

101.        Plaintiffs reallege and incorporate by reference all preceding paragraphs, as though fully set forth herein.

102.        Defendants Costa and Costa Sr. were employees and/or agents of GFIS and GWMIA and acting within the course and scope of their employment and/or agency.

103.        Defendants GFIS and GWMIA are accordingly liable as *respondeat superior* and/or via agency for all harms proximately caused Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award the following relief in favor of Plaintiffs as follows:

A.   All actual and statutory damages in amounts to be proven at trial;

B.   Pre and post judgment interest;

C.   Costs;

D.   Statutory attorneys' fees;

E.   Punitive damages in an amount to be proven at trial;

F.   Any and all other relief and Court deems proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Date: May 25, 2018

**RICHARD A. NERVIG, P.C.**


S/Richard A. Nervig
Richard A. Nervig
600 West Broadway, Suite 1540
San Diego, CA  92101
(760) 451-2300 (Telephone)
Email: richard@nerviglaw.com

***Attorney for Plaintiffs***